Good morning ladies and gentlemen. We have Judge Rovner with us by a video. Good morning Judge Rovner. We're ready to proceed I think with the first Oh dear. Judge Kaney, I cannot hear. We're trying to unmute you. Judge Kaney Can you hear me now? Judy Smith Oh yes, and I can hear you. Judge Kaney All right. We're ready to proceed then. Okay. Well, may it please the court, Tom Aquino for the appellant Donald Maier. This morning I would like to focus on our ineffective assistance of counsel claim because once again the Wisconsin Court of Appeals has issued a decision that is contrary to or an unreasonable application of the prejudice prong of Strickland. So Mr. Maier Judy Smith No, forgive me Mr. Aquino. I'd like to ask you sort of a bottom line question before you get into your argument if you do not mind. Under a true threat analysis, can we look not just to the words in the letter but also to the fact of the letter? In other words, simply by mailing that letter and stating that it was a former convicted defendant writing to jurors. Maier was saying, I know who you are and where you live. You did something bad to me and now I want to do something bad to you. Can the fact of a letter be threatening without regard to the words? In other words, just the fact that a letter was sent by someone like this. Aquino No, not by itself. Perhaps it could be one factor that could be considered as part of the context of the entire communication by Maier to determine whether it is a threat or not. Again, this letter that supposedly contains this threatening language, he also says, could you please forward this letter to the government's pardon board? And can you please contact the authorities on my behalf? So in some circumstances, perhaps yes, contact out of the intent. But in the context of this case where he hasn't contacted them in the five years since his conviction, despite erroneously being sent their names and addresses, suggests that he did not have that intent. And even under the true threats doctrine hasn't been frequently addressed by our Supreme Court. But even in Watts, where the court first announced the true threats doctrine, there is a discussion that context is important, including, for example, the reactions of the listeners. So I don't think just sending a letter or contacting the jurors could be by itself threatening. And it's actually fairly common in Wisconsin for defense attorneys to look at what happened during deliberation. It's common for journalists who are investigating possible wrongful convictions to contact jurors. Wisconsin's a little unusual in that regard, I might think. At least speaking for our circuit. But in any event, is there an admonition given by the trial judge that you can or cannot speak to the journalist, that you can or cannot speak to other people? Or does the judge make any admonition at all to the jurors? In this case, there was no evidence that there was any admonition to the defendant during his first trial that he could not contact the jurors. Well, no, I don't mean to him particularly. Did the judge talk to the jurors themselves and say, you don't have to take any phone calls, you're not required to, or something like that? I don't know that there's any specific rule or law. I can say as the practice, reading many transcripts, that's often the case that there's no obligation for a juror to speak. I meant specifically, in this case, I want to know my reason I'm asking the question. What the feeling of the jurors were, had they had any admonition from the trial judge about phone calls or contacts in person or otherwise that might be made to them? That wasn't in the record. It was not in the record. From the first trial? Yes. Yes. No, that wasn't in the record. Okay. That's my question. Did they come into this with some information that the judge had given them with regard to any contact they might have from people outside the court? That's not in the record. And I'm still interested in whether the fact of the letter, just the fact, can be threatening. Look, for example, if someone sends talcum powder in an envelope in the mail when there is an anthrax scare, would that be a true threat despite the lack of any words? Possibly, yes. And it's also, I don't think it's just any, I don't think it would necessarily fall under the First Amendment because it's conduct. It's sending material. It's not a threat. If it's sending talcum powder or something that's intended to resemble anthrax or some other dangerous substance, I would say is conduct and doesn't invoke the First Amendment. Counsel, given that we have to give deference under EDPA here to the Wisconsin Court of Appeals determination, isn't it difficult to say, even if we think the better reading is that an objective threat isn't enough, that there has to be subjective intent? Isn't it pretty hard to say that's clearly established Supreme Court law when that case is ambiguous enough that it's created a circuit split? And understanding that a circuit split doesn't necessarily resolve the question, you still have language in the Supreme Court case that's not totally clear. And courts have disagreed about its application. Well, I would, first of all, why the Blackfeet, Virginia case is so difficult is because there were three different defendants who had, their cases are at three different postures, or at three different postures. And there was some disagreement between the judges, justices, excuse me, about where the problem with the provision in question arose. For the four justice plurality, it was in the statute itself. And so the court deemed the statute, the plurality would have deemed the statute unconstitutional. Justice Scalia thought, opined that it wasn't the statute itself, but the jury instruction that was approved by the Virginia Supreme Court that created the problem. And when you look at the actual holding in both the plurality and Justice Scalia's concurrence, if you plug in the Wisconsin statute, it would apply. So the plurality says that the, I'm quoting at page 367 in black, the prima facie provision in the case ignores all the contextual factors that are necessary to decide whether a particular cross burning is intended to intimidate. The First Amendment does not permit such a shortcut. Well, if you put in the Wisconsin stocking statute at issue, because there is an objective alternative to the subjective prong, the jury can ignore all the contextual factors that are necessary to decide whether Mr. Meyer's specific contact was intended to intimidate or threaten. Similarly, Justice Scalia says that because of the instruction has been given, it is, and this is at page 379 to 80, where the instruction has been given, it is impossible to determine whether the jury has rendered its verdict in light of the entire body of facts, including evidence that might rebut the presumption that the burning was done with an intent to intimidate. And again, if because of the alternate option of an objective prong, there is a, the jury can convict without considering whether there was an actual intent to threaten in this case. Mr. Aquino, I'd like to follow up on Judge Barrett's question to you, because we are dealing with many layers of deference. Ed Post deference, Strickland deference, habeas deference, et cetera. What is the one thing, your best argument, that you would point to in this case that would say to a federal court, the state court got this so wrong that you, a federal court, are compelled to grant the writ? What's your? The best, it's the failure to properly apply the prejudice prong of Strickland. I think this case is similar to this court's opinion in Taliber v. McCautry, 539 F3D 766, which I cite in my reply brief, where the, this court rejected the Wisconsin Court of Appeals, quote, brief and cursory analysis of Strickland's prejudice prong, close quote, because it, quote, failed to evaluate the witness testimony in light of the defense and the nature of the state's case against them, close quote. And so that's what the, here the court engaged in a two-paragraph analysis of the, of prejudice. Because the Wisconsin Stocking Statute applies whether, under either an objective or a subjective standard, well, the Court of Appeals reasoned, well, because it's under, can be decided under either objective or subjective, the fact that the trial counsel failed to introduce subjective evidence that he did not intend this to threaten, it just wasn't necessary, which is akin to a, a sufficiency of the evidence argument. Because there was sufficient evidence of objective intent, it doesn't matter that there was a failure to introduce subjective intent. And, you know, subjective intent was an issue throughout the case. Both the defense and, and the prosecution argued about whether Meyer subjectively intended this as a threat. There was, and the, there is, I think, a reasonable probability that the jury convicted based on subjective intent. Because again, the, the jury, even though Mr. Meyer sent 10 identical letters, the jury acquitted him on four of the counts. The only possible reason for that would be that, you know, the jury concluded that Mr. Meyer, that the letter, excuse me, that the recipients of the letter just were not threatened by the letter. It follows then that the jury also concluded, well, we can't say beyond a reasonable doubt that this letter is objectively threatening if we think that four out of the 10 recipients also thought that the letter was not threatening. Then they would turn to the subjective intent, find, you know, Mr. Meyer's testimony, who's, again, Mr. Meyer testified about his subjective intent. The jury may not have, you know, found him a compelling witness, which is why it was important and so damaging that trial counsel didn't introduce testimony from his neighbor, who actually went with Mr. Meyer to the, um, But counsel, what about the Wisconsin court's decision that it's not inconsistent with a subjective intent to threaten, even if he was trying to obtain a pardon? Well, it doesn't, the standard, again, doesn't have to be inconsistent because, um, it just makes it less likely that he was a It's a probability that the jurors would have voted to acquit him, right? Ultimately, that's the standard, but the question is whether, you know, all this evidence that he not only went to the court, to the Capitol to obtain this pardon material with, um, with his neighbor, but also that he discussed the case often with his neighbor and never expressed any animosity towards his jury. He was upset with the system, uh, for, uh, convicting him, um, but that would, uh, go a long way towards showing that his intent was to, uh, as maybe quixotic as it was, to rally the jury to his side, to, um, you know, to get them angry at the system for letting their names and addresses out and to... Would you recount how he, how they were, how they were made available to him? Well, it was, um, he received it in a box of material that he received from his attorney after his appeal of the initial case. So how his attorney got it, I don't know, but that's how we ended up with it. We don't know, and it's not a practice of that particular trial court to release names and addresses. I, I can't speak to that. I know there was testimony that they thought that the, the names and addresses were supposed to be sealed, and that was part of Mr. Meyer's point was they were supposed to seal it, but they didn't. I'd like to reserve the rest of my time for rebuttal. Thank you. Thank you. Thank you. Yes, Your Honor. May it please the Court? Each of Meyer's four claims challenges the mens rea element to the stalking statute in Wisconsin, and this element is met if Meyer either knew or should have known that one of his letters would cause serious emotional distress to the jurors. In other words, this element is met if the state's evidence proves that Meyer either had a subject of intent or an object of intent to threaten. So the Wisconsin Court of Appeals reasonably denied each of these four challenges, or at the very least, its resolution was not unreasonable under AEDPA. So I'd like to begin with what my friend characterizes as his best point. So he says the Wisconsin Court of Appeals failed to properly apply the Strickland Prejudice Standard, but on App 34, the Wisconsin Court of Appeals opinion, they, they reasonably characterize Strickland. They say there's not a reasonable probability that the intent evidence would have changed the result. They say, in sum, we are confident that the outcome of the trial was unaffected by the omission of the document evidence that Meyer's pardoned efforts, of Meyer's pardoned efforts, and the testimony from his neighbor. So the fact that they, one, are looking at a reasonable probability, and then, two, looking at would the result have changed, and in the course of that second inquiry, looking at did the state prove their, their case on the objective, the objective intent prong of the element, and would any of the evidence undermine that, that's just a, a, a fair characterization of Strickland and a correct application of it. But in any event, even if they unreasonably applied Strickland, that would just get Meyer out of AEDPA deference, and this Court would have to apply, apply Strickland prejudice, the prejudice prong in the first instance, and he can't overcome that even on, even if it were on direct review. And it's because... Mr. LeRoy, what if Meyer not only had no intention to threaten, but also had a disability that prevented him from having, you know, any empathetic understanding of human emotion, and therefore could not have known that his letter would threaten the former jurors? Under your analysis, could he be convicted under the Wisconsin statute? Would, would, would that be lawful under the holding of Black? So, in Your Honor's hypothetical, if the disability obviated his ability to understand his own actions, like that he's actually engaging in conduct, then his conviction would not stand. That's because the actor must intentionally engage in a course of conduct. So if there was an incapacity defense, for example, that would of course be valid. An additional point is that, so it says the actor intentionally engages in a course of conduct, so an inadvertent mailing, perhaps if a friend gave him a letter and asked him to mail it, that wouldn't count. He has to know that he is writing the words, and I think it's fair to say that he has to understand the English language, but he does not have to understand how, or excuse me, he can be convicted even if he did not understand how a reasonable person would interpret the language he is communicating. So that would, that would not be enough to obviate the conduct. But in any event, here, Meyer has not said that he has a disability. He said he has been an unsophisticated user of the English language, but I don't think the evidence in the record really suggests that he did not understand the language he is saying. So, for example, in his first letter, he threatens to release the jurors' names and home addresses to dangerous inmates, and he knew that these inmates could do terrible things. He testified something to the effect of, you would not believe what the inmates said they would do if they had their lists. That is certainly objectively threatening, and that's strong evidence that he even knew that it was threatening. He also said that the jurors' names could be heard nationwide soon. He said that everybody would not get peace until he gets justice. His first letter was titled, Jury Duty Is Not Over, suggesting that the jurors had a moral responsibility to do what he said, and that if they didn't do what he said, harm would follow. In the second letter, he says, I read the paper, too, suggesting that he's tracking the jurors' every move and watching them, making sure they're going to do what he says. And then he says in scare quotes, you have nothing to fear for me, in the second letter. And additionally, we had evidence beyond the content of the letter. So we had nine jurors testify to the terror that the letters caused them. They said that we were in fear of physical harm to ourselves or our families. And then the detectives at the police office, once they received the complaints on the following Monday, they conducted an expedited investigation, which is evidence that they took the threat seriously. And all of this is against the backdrop of Mayer's previous conviction for threatening to kill two judges. And he knew that the jurors that he sent the letters to were aware of that conviction because they, in fact, convicted him. So all of that is powerful evidence that the state has made its case on the mens rea element. Now, against all of this, he's offered a few pieces of missing evidence that he said his lawyers should have included. So he has a report from an officer, Goldberg. For one, this argument is procedurally defaulted. But in any event, the opinion of this officer is not relevant because we're looking to the reasonable person, not to an expert like this officer. And then even if it were relevant, the context suggests this report was very unhelpful to Mayer. So the report does say that, quote, none of the questions are actually threatening. But this first letter contained more than questions. And the use of the term actually threatening suggests an overt threat. But here we're saying in context it is covertly coercive but nonetheless threatening. He also has the testimony of Officers Schwartz and Christensen. This is about their initial efforts to investigate the first complaint and whether or not the DA's office gave information to take this complaint seriously. When the detectives who were actually tasked with doing the full investigation received the complaint in ordinary course, they conducted an expedited investigation because of the seriousness of it. So that evidence wouldn't help them either. And then the final pieces of evidence that he says should have been admitted are the testimony from his neighbor and then letters from two government officials. And he says that this undermines the subjective alternative to the mens rea element. But that wouldn't undermine the objective alternative, and so therefore the outcome would not have been different. This whole thing, unfortunately, was facilitated by the court release of those names and addresses? Perhaps so. I'm not sure how. Perhaps. I mean, he wouldn't have found out if they hadn't released it that way. Well, so I'm not sure if the court was not allowed to release the names and addresses to his attorney, but certainly his attorney should not have delivered them to Meyer. And certainly Meyer should not have then used that to reach out to these jurors. So your belief is that the only way that the names were released was to his lawyer? Yeah, I think that's correct because his lawyer was the one, not current counsel, previous appellate counsel gave Meyer his case file, and in that case file this document was included and it should not have been included. So his lawyer committed an error there. But Meyer should not have, despite that error, then contacted them at all. But certainly he shouldn't have contacted them with two threatening letters. But the jurors, that gets back to my initial question, the jurors were not admonished that they should not receive or need not respond or anything with regard to communication from anyone, including the defendant. So the record does not disclose what the victim jurors here were admonished to do. In this trial, the jurors were admonished that they could discuss or could not discuss this. Well, in this trial, but I'm talking about the initial trial. Yes, that's correct. So in the initial trial, we don't have those trial transcripts in the record. But perhaps that evidence would help in a closer case. But here, Meyer sent a letter that says, I'm going to release your names and addresses to inmates who he knew could do terrible things. That's very threatening language. And so it's very hard to characterize that as just an innocent request for help. So he could have said. Why would he have asked the jurors to send his letter to the pardon board if he thought it was threatening? I think that Mr. Meyer has demonstrated a disrespect for the entire justice system. And so I think he's it would be essentially thumbing his nose in the face of the pardon board saying, go ahead and contact them if you want. You know, I don't care. But that doesn't undermine the threatening content of the letters. And certainly from the jurors perspective, when they knew that Meyer was capable of threatening to kill two judges. And just not to put too fine a point on that. The court is on epideference here on the prejudice prong. So certainly it is not unreasonable for the Wisconsin Court of Appeals to conclude that this missing evidence would not have tilted the balance in such a way to satisfy Strickland. So if I could just briefly touch on the remaining three claims. He has a jury instruction claim. But we think that this is just an argument about a meaning of state law. And so this court cannot revisit that. He has a sufficiency claim. His arguments are just asking the court to reweigh the evidence. And that's prohibited by Jackson. And then on his First Amendment claim, as Your Honor's questioning had alluded to, Black does not clearly establish that subjective intent is required under the True Threats Doctrine. And as this court said in par, Black was unclear on this exact point. And then since the Supreme Court granted Certiorari and Alanis ostensibly to settle this question and then avoided the issue on statutory grounds, that's powerful evidence that this issue is unclear. Right. Well, they certainly did punt. Yes, that is correct. And so unless the court has any further questions. Well, let me get back to Wisconsin and jurors. Are there statutes that govern how the judge deals with the jurors and what he or she may or may not tell the jurors? About releasing their names or communicating with people to call. So I reviewed the statutes here. Whether to seal is in discretion of the judge. And if the court issues an order to not divulge the information, then you would just have a simple contempt of court orders. We don't know here in the record if there was a specific order to not divulge, but it does say in the original trial docket, publicly available docket, that it was sealed. So I think it's fair to say that there was at least a court order. But the jurors' names and addresses were sealed. Yes, that's correct. So we didn't prosecute Meyer for violating a court order. We prosecuted him for stalking. Perhaps a prosecution could have been brought under that, but the local prosecutor decided to take this course of action. And I think it is a better fit. He sent repeated letters that caused discord in the community. I think stalking is a fair fit here. Thank you. Thank you. I'll give you another additional minute. All right. Thank you, Your Honor. First, about the supposed threat to release their names, the letters actually read what he – Meyer is attempting to use sarcasm and absurdism to make the point that the local judicial system was inept for releasing his name. So he says – But, counsel, that's one interpretation. But at this point, I mean, we're asking whether a reasonable juror could have understood it in a more threatening way. I mean, the argument you're making strikes me as one to make to the jury. Well, it's an argument why the evidence is closer in this case and why it explains, again, the jury found that – four of the recipients were not actually threatened. And I just want to correct what was actually said in the letter because it was characterized as him, as Mr. Meyer, threatening to release their names and addresses. He says, do you think Wood County did a professional job, such as keeping your names and addresses from someone like me? Well, he's being sarcastic because they didn't keep his names and addresses. But, counsel, I guess you are emphasizing that you think that the fact that the jury found that in some cases the jurors weren't actually threatened necessarily went to this subjective divide. One of the elements is also that the Actors Act caused the specific person to suffer harm. So you could have a tougher-than-usual person, and some of these former jurors did testify, hey, I really wasn't threatened. And I think it's perfectly possible to say, hey, a reasonable person might be scared by this, but you have someone who says, you know what? Actually, I wasn't, right? Right. It's possible, but a reasonable probability is that if only one actually testified that he wasn't threatened or didn't feel harassed, everyone else gave substantially similar testimony that matched the definition of severe emotional distress, which is simply to feel threatened, feel intimidated, and so on. But also it just illustrates why this was a close case for the jury, which deliberated over the course of two days, asked to be re-instructed on this. It's reasonable if they concluded that four of the recipients were not threatened, did not feel threatened, that the jury also decided we can't conclude beyond a reasonable doubt that this letter is threatening because there's a reasonable probability that Mr. Meyer was like the four recipients who did not view the letter as threatening. Thank you, counsel. Thank you. Thanks to both counsel, and the case will be taken under advisement.